**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION**

CURTIS NELSON, #82756                                                    PLAINTIFF

VS.                                                  CIVIL ACTION NO. 3:04CV368BN

CMCF 720 III, MEDICAL STAFF MEMBERS                                     DEFENDANTS

---

<u>**MEMORANDUM OPINION AND ORDER**</u>

The Plaintiff Curtis Nelson, *pro se,* and counsel for the
Defendants, John L. Clay and M. Chadwick Smith, appeared before the
undersigned United States Magistrate Judge on the 13th day of May,
2005, at the James Eastland Federal Building and Courthouse in
Jackson, Mississippi, for an omnibus hearing.  The Court scheduled
this hearing for various pretrial purposes, including a <u>Spears</u>
hearing.  The Court conducted this hearing in an attempt to insure
the just, speedy and inexpensive determination of this *pro se*
prisoner litigation and to determine whether or not the Plaintiff's
claims were supported by a factual or legal basis.  Pursuant to a
Consent signed by all parties on May 13, 2005, District Judge
William H. Barbour, Jr. entered an Order filed May 27, 2005,
assigning this cause to the undersigned United States Magistrate
Judge for all further proceedings.

According to Plaintiff's sworn testimony at the omnibus
hearing, his case involves the medical care he has received while
incarcerated at the Central Mississippi Correctional Facility as a
convicted felon.  The Plaintiff contends that he has suffered from

cruel and unusual punishment due to his medical care.  In November, 2003, he suffered from a kidney infection and went to the CMCF clinic.  Dr. Perry prescribed a medicine, and he took it twice a day.  The prescription was renewed on a follow-up visit the next week.

The Plaintiff testified that the infection returned at the end of December, 2003, and that he turned in a sick call request.  He was not treated again until his urine was tested on January 20, 2004.  He was not sent to see the doctor until February 19, 2004, and he suffered great pain during those 5-6 weeks.  Although he kept turning in sick call requests, the Defendants did not take him to the doctor until February.  According to the Plaintiff, this constituted cruel and inhuman treatment.

The Plaintiff's medical records were introduced into evidence. They confirm that the Plaintiff was treated by Dr. Gloria Perry on October 29, 2003, for "cold" symptoms, including cough, coarse breath sounds, and shortness of breath with exertion.  He had no fever and only a mildly elevated blood pressure.  Dr. Perry prescribed antibiotics [doxycycline 100 mg. twice a day for 10 days] for an upper respiratory infection and ordered laboratory studies.  These tests indicated that the Plaintiff had a urinary tract infection.  Floxin was prescribed.

On November 13, 2003, the Plaintiff was returned to the medical area and was found to have improved by Dr. Deborah Ables.

He was again seen by medical staff on November 21, 2003, and at the hypertension clinic on December 11, 2003, according to the records.

The Plaintiff's records contain a copy of a sick call request for complaints of "kidney pain" on February 16, 2004. He was treated by Dr. Gloria Perry on February 19, 2004. She diagnosed prostatitis, prescribed the antibiotic Bactrim, and requested a urinalysis to check for an infection. The report of this test on February 27, 2004, showed no infection or any other abnormality. The Plaintiff was seen again at the clinic on March 5, 2004, and the doctor noted that his "flank pain" was resolved.

Thereafter, the medical records reflect that the Plaintiff continued to be treated and followed for his high blood pressure, cholesterol, and possible prostate symptoms. He was seen at the medical clinic on April 19, June 16, September 23, December 1, and December 14, 2004, for various medical problems. He was also assigned to the Hypertension and Cholesterol Chronic Care clinics and has been regularly seen in these clinics. His most recent medical visit was April 7, 2005.

The undersigned has carefully considered the facts as alleged by the Plaintiff and as demonstrated through his medical records. We have considered his contentions in conjunction with the applicable law regarding the medical care that these Defendants are required to provide the Plaintiff, an inmate in their custody.

3

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners.  *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976).   The prisoner plaintiff must show **objectively** that he was exposed to a **substantial risk** of serious harm before any liability can be found.  *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). Then, he must show that jail officials acted or failed to act with **deliberate indifference** to that risk.  *Id.* at 834, 114 S.Ct. 1970. The standard for finding "deliberate indifference" is a **subjective** inquiry, and the prisoner must show that the jail officials were actually aware of the risk, yet consciously disregarded or ignored it.   *Id.* at 837, 839, 114 S.Ct. 1970.   Deliberate indifference requires **actual knowledge and conscious disregard** of the risk of harm to the plaintiff.  *Id.*  It cannot be inferred from a prison official's mere failure to act reasonably, i.e., from negligence alone.   *Lawson v. Dallas County*, 286 F.3d 257, 262-63 (2002), citing *Hare v. City of Corinth, MS*, 74 F.3d 633, 649 (5th Cir. 1996).

Under the case law discussed above, the Defendants must have exposed the Plaintiff to a **substantial risk of serious harm** for liability to be found, according to the *Farmer* decision.  Under the facts as alleged by the Plaintiff, and as evidenced through his

4

medical records, the Plaintiff was never at risk for any serious harm.

The medical records are replete with evidence that the Plaintiff has received extensive medical care during his incarceration.  It may not have been the treatment he preferred, or at the immediate time he requested the care.  The fact that the Plaintiff may not have been *satisfied* with the treatment or care he received is not indicative of its "unreasonableness."  Further, a prisoner is not entitled to medical treatment simply upon request.  As stated in **_Peterson v. Davis_** *,* 551 F.Supp. 137, 146 (E.D. Md. 1982),

> [T]he mere failure to treat all medical problems to a prisoner's satisfaction, even if that failure amounts to medical malpractice, is insufficient to support a claim under §1983. [citations omitted.]   Methods of diagnosis and choice of treatment of an inmate are, therefore, not subject to judicial review.

At most, we find that the Defendant prison officials were merely negligent in failing to obtain treatment for the Plaintiff's complaints of kidney pain during the weeks in January and February, 2004, the period of time during which he contends they failed to treat him.  When he was tested for urinary infection in February, none was found.  Even if an infection had existed, negligent medical care does not constitute a valid section 1983 claim. **_Mendoza v. Lynaugh_**, 989 F.2d 191, 193 (5th Cir. 1993).  Delay in medical care can only constitute an Eighth Amendment violation if

there has been deliberate indifference, *which results in substantial harm. Id.* The delay the Plaintiff complains of did not result in any substantial harm to him.

The United States Constitution does not forbid simple negligence, and Plaintiff's claim is not a cognizable claim under 42 U.S.C. § 1983.  For these reasons, the Court finds that the Complaint filed in the instant case fails to state a claim upon which relief may be granted, is legally frivolous, and should be dismissed under 28 U.S.C. § 1915(e)(2)(B)(i) and (ii) with prejudice.

IT IS, THEREFORE, ORDERED that the Complaint is dismissed with prejudice and that a separate Final Judgment in favor of the Defendants shall be entered on this date.

THIS the 11th day of July, 2005.


S/ Alfred G. Nicols, Jr.
UNITED STATES MAGISTRATE JUDGE

6